## FAIRCHILD & BACON vs. CASE, late sheriff of Oswego.

In an action against a sheriff for the *escape* of a prisoner, he cannot object as a bar to the recovery, that the plaintiffs in the original action declared against the defendant *generally* as in custody, instead of declaring *specially* that he was in *close custody*.

The act for *more easy pleading in certain suits*, does not extend to cases of *non-feazance* by public officers; a sheriff sued for a *negligent escape* cannot therefore avail himself of the *statute of limitations* without pleading it. Even when sued for a *voluntary escape*, whether the sheriff can avail himself of the *statute of limitations* without pleading it, *quere*.

A new trial will not be granted, because the judge refused to permit a question to be put to a witness in this form: "By what means and in what manner did the prisoner break jail?" on account of the generality of the question. To entitle a party to such an inquiry, he should apprize the judge of his intention to show such a state of facts as would *excuse the* sheriff.

Nothing but the act of God, or of the enemies of the country, will excuse the sheriff.

*General reputation* of the *insolvency* of the prisoner, is inadmissible in an action against the sheriff for an escape.

THIS was an *action on the case* tried at the Oswego circuit, in June, 1839, before the Hon. PHILO GRIDLEY, one of the circuit judges.

The plaintiffs declared for the voluntary escape of one Gerlack, from confinement in the jail of Oswego, on an arrest in an action of assumpsit, at the suit of the plaintiffs by virtue of a *capias ad respondendum*. The plaintiffs proved the *capias* with a return by the defendant of *cepi corpus in custodia*. They also produced an exemplification of the judgment against Gerlack, from which it appeared that the *plaintiffs   [ *382 ] in the action against him, declared against him *generally, as in*

*custody of the sheriff of the county of Oswego*, and that judgment was rendered against him for $2044,44 ; the plaintiffs then proved a *negligent escape* of Gerlack. Evidence was given on both sides upon the question whether Gerlack was, at the time, liable to arrest as a *non resident* of the state ; and also on the question of his ability to pay the debt. The jury found a verdict for the plaintiffs, with $2304,39 damages, and six cents costs.

The defendant's counsel, on a case made, moved for a *new trial*.

*B. Davis Noxon*, for the defendant, insisted on the following points among others : 1. That the evidence did not show that Gerlack was liable to arrest. 2. That the plaintiffs, by declaring *in chief* against Gerlack and proceeding to judgment, had thereby discharged the defendant in this cause from all liability, by reason of his return of *cepi corpus in custodia*. 3. That the suit was not commenced within a year after the escape ; and this defence was available under the general issue, yet the judge held the statute of limitations must be pleaded. 4. That a question to a witness, " by what means and in what manner did Gerlack break jail ?" was overruled. 5. That general reputation that Gerlack was insolvent was rejected by the judge. 6. That the judge charged that the rule laid down in *Huffman* v. *Hulbert*, 13 *Wendell*, 377, was inapplicable in this cause.

*By the Court*, COWEN, J. 1. All the questions of fact in this case, properly belonging to the jury, were submitted to and disposed of by them ; and among these was the question of Gerlack's non-residence and consequent liability to arrest and imprisonment.

2. If the form of declaring had entitled Gerlack to a discharge, he alone could take advantage of the slip—not the sheriff.

3. The statute concerning venues, and for *more easy pleading* in certain suits, 2 *R. S.* 277, 2d ed. § 28, 29, is in terms confined to *acts* [ \*383 ] *d* one by officers *virtute officii ;* and \*does not extend to mere nonfeasance, such as a negligent escape. *Elliot* v. *Cronk's adm'rs*, 13 *Wendell*, 35. *Hopkins* v. *Haywood*, *id.* 265. The statute of limitations should therefore have been pleaded. Independently of the statute for more easy pleading, the form by which a sheriff or other officer must avail himself of the statute limiting actions for escapes, is the same as in other actions. *Vid.* 2 *R. S.* 224, 2d ed.

It was said the declaration is for a *voluntary escape*, which implies a positive act of the sheriff. Without deciding whether he might, in such a case, avail himself of the limitation without plea, it is sufficient to say that the declaration was in effect also for a *negligent escape*. This may always be proved, and in fact was so here, under a count for a voluntary escape.

Where two matters may be given in evidence under the same count, one requiring a defence to be pleaded and the other not, there can be no doubt that the defendant must plead, or he will lose his right of defence as to the former. It is by no means clear, however, that you are not obliged to plead the limitation in answer to a voluntary escape.

4. The question put and overruled, as to the means or manner of escape, is not shown to have been relevant. It might have been answered by saying that the escape was effected by means and in a manner which took from the charge of negligence in the sheriff, without showing any real excuse, as that it was by the act of God, or the enemies of the country. The latter seem to be the only excuses as to manner and means which the sheriff can set up. He stands in this respect on the same ground with a common carrier. That may be seen by 1 *Rolle's Abr. tit. Escape, D. pl.* 5, 6, 7, *p.* 808. It is said in several books, citing *Rolle*, that the sheriff would be excused by a sudden fire. But Rolle puts it on the ground that the fire is kindled by the act of God. In *Green* v. *Hern*, 2 *Penn. R.* 167, 169, Gibson, Ch. J. says, that according to the common law since the day of Rolle's Abridgement, the jailer can avail himself of nothing as matter of defence, but an act of God or the common enemy. The same rule was stated by him in *Wheeler* v. *Hambright*, 6 *Serg. & Rawle*, 390, 396. *He there says the liability of a sheriff is, in this respect, [ *384 ] like that of a common carrier. *See also Sleemaker* v. *Marriott*, 5 *Gill. & Johns.* 406, 410. To warrant the quesion, counsel should at least have apprized the judge of his object, and shown that the means and manner inquired for were such as the sheriff might lawfully allege in his excuse.

5. It is not necessary to say that common reputation as to the state of a man's property, and whether he be solvent or not, should in all cases be excluded. In behalf of a prisoner indicted, and on trial for passing counterfeit bills, the reputation of his neighborhood was held receivable by the supreme court of North Carolina, to show that he was a moneyed man. *The State* v. *Cochran*, 2 *Dev.* 63. Here it was offered in behalf of a prisoner in close custody for debt, to prove that he was insolvent. It is quite obvious what the answer would always be under such circumstances; and yet how fallible, as the ground of conclusion by a jury. It would seem at all times to come within the spirit of the rule which rejects hearsay evidence to support a particular fact; and when offered in connection with circumstances directly calculated to establish insolvency of themselves, and raise a general rumor of it in the neighborhood, reputation would be, at best, but a very poor item of proof. Suppose a merchant to sue for words charging him with bankruptcy, was it ever thought the defendant could aid his plea of truth in justification, by proving the plaintiff to be a reputed bankrupt?

6. The rule of *Huffman* v. *Hulbert*, 13 *Wendell*, 377, which the judge

refused to apply, was this : A request made by a surety to the creditor that he should sue the principal, and a refusal, will not discharge the surety, though the principal finally turn out to be insolvent, unless it be made clear by proof that he was solvent at the time of the request, and the debt lost by the delay. It is barely necessary to state the point resolved in that case to see that the judge was right here.

There is no reason for interfering on the ground that the damages found by the jury were excessive.

New trial denied.