C. B. SHEPARD AND ANOTHER V. D. PHEARS.

1. A guaranty of "the collection" of a note is not a guaranty that the note will be paid on maturity by the maker; but is no more than a guaranty that with proper diligence the note can be collected at its maturity or within a reasonable time thereafter.  If when the note matures the payee or holder does not use ordinary diligence to collect it, the liability of the guarantor ceases.

2. On a promissory note made by C. to P. in October, 1861, and due one year thereafter, an undated guaranty by S. appeared as follows : "I guarantee the collection of the within note." Suit on the note and guaranty was brought in March, 1867, against C. and S. jointly. No date or consideration for the guaranty was proved ; no insolvency of the maker alleged or proved ; no showing of protest of the note, nor of notice to the guarantor of its non-payment, nor of any effort by the plaintiff to collect it from the maker. S. filed a general demurrer and a plea denying diligence of the plaintiff. The case was submitted to the court below, for a trial without a jury, and judgment was rendered for the plaintiff against both maker and guarantor. *Held*, that the judgment is erroneous as against the guarantor, because, under the circumstances, his liability had ceased by reason of the laches of the plaintiff. And the result would be the same if the defendant S. could be regarded as an indorser, inasmuch as this suit was not brought by the plaintiff to the first term after the opening of the courts at the termination of the war, nor to the second term with a showing why not brought to the first.

3. The Act of this State prescribing suit to the first term, etc., as "a mode of establishing the liabilities of drawers and indorsers (Article 229, Paschal's Digest), is in no sense a statute of limitations.

4. The courts of this State have been open to suitors since the summer of 1865.

ERROR from Washington. Tried below before the Hon. I. B. McFarland.

The facts are clearly indicated in the opinion of the court.

It will be seen that after the first opinion of this court, a rehearing was asked, and a more elaborate opinion then delivered.

*J. E. & Seth Shepard*, and *Walton & Green*, for plaintiff in error.—That demand and notice was necessary to fix the liability of the guarantor, see 1 Parsons on Contracts, page 516 ; Story on Promissory Notes, § 472 ; Bickford v. Gibbs & Cushing, Oxford Bank v. Haynes, 8 Pickering, 423 ; Douglas v. Reynolds, 7 Peters, U. S. 126.

The case of Douglas v. Reynolds is directly in point.

Story, J., in delivering the opinion of the court (7 Peters, 126), uses the following language : "The fourth instruction insists that a demand of payment should have been made of Haring (the principal debtor), and in case of non-payment by him, that notice of such demand and non-payment should have been given in a reasonable time to the defendants (the guarantors); otherwise the defendants would have been discharged from their guaranty.

"We are of the opinion that this instruction ought to have been given. By the very terms of the guaranty, as well as by the general principles of law, the guarantors are only collaterally liable upon the failure of the principal debtor to pay the debt. A demand upon him, and a failure on his part to perform his engagements, are indispensable to constitute a *casus fœderis*."

The creditors are not, indeed, bound to institute any legal proceedings against the debtor, but they are required to use reasonable diligence, to make demand, and to give notice of non-payment.

The guarantors are not held to any length of indulgence or credit which the creditors may choose, but have a right to insist that the risk of their responsibility should be fixed and terminated within a reasonable time after the debt has become due.

The case of Allen v. Rightmere, 20 Johnson's Rep., 365, is distinguishable. There, the note was payable to the defendant himself, or order, at a future day, and he indorsed it with a special guarantee of its due payment, and the court held his engagement absolute and not conditional.

The name of the guarantor, Shepard, does not appear upon the face of the note ; he is not a party to the note itself, and his undertaking is clearly collateral, and his liability dependent upon the failure of the maker of the note to pay it when presented.

This is the general principle of the law of guaranty, and is sustained in the Supreme Court of the United States and the several State courts. In New York it would seem that a distinction is made in guaranties, between the words *payment* and *collection.* Where the payment of a note is guaranteed, the obligation is treated as an original promise; but where the collection is guaranteed, the undertaking is collateral, and demand of the maker, with notice of non-payment to the guarantor, in a reasonable time, is required. (Story on Promissory Notes, § 478 ; 1 Parsons on Contracts, 516 ; Greene v. Dodge, 2 Ham., 498 ; Beebe v. Dudley, 6 Fost., 249.)

*P. H. & J. T. Swearingen,* and *Chandler, Carleton & Robertson,* for defendant in error.—1. The indorsement of plaintiff in error, to-wit : "I guarantee the collection of the within note : C. B. Shepard," being without date, must be presumed, in the absence of proof, to have been made at the time of the inception of the note, and before its delivery to the payee. (Cook v. Southwick, 9 Tex. R., 618 ; 7 Miss. R., 440 ; Carr v. Rowland, 14 Tex. R., 277.)

2. Shepard is not the payee of the note, nor a party to the note except by this endorsement. Having signed his name upon the back of the note at its inception, and without words to limit the character of his undertaking, beyond what the law implies by a simple indorsement of his name, he is liable as an original promissor or surety. He is not a payee, transferring the note by indorsement. His name is upon the back of a note payable to another. He cannot, therefore, be considered as a common endorser, and is not entitled to the privileges of a common endorser. (Moies v. Bird, 11 Mass., 436 ; White v. Howland, 9 Mass., 314 ; Sumner

v. Gay, 4 Pick., 311 ; Nelson v. Sanborne, 2 N. H., 413 ; Austin v. Boyd, 24 Pick., 66 ; Baker v. Briggs, 8 Pick., 130 ; 16 Ohio, 1 ; Cook v. Southwick, 9 Tex. R. 618; Carr v. Rowland, 14 Tex. R. 277 ; Pierce v. Irvine, 1 Minnesota, 369.)

3. The petition declares against the guarantor as a principal promissor. In this respect the petition was not defective. Upon this point we refer to all the cases last cited.

4. The plaintiff in error in his brief insists that the petition should have contained an allegation of demand of payment upon the maker of the note, and notice of non-payment to the guarantor. This was not necessary. The guarantor was a principal promissor, and it was only necessary that the maker of the note should have been jointly sued.

This relation of the parties is precisely the same as if he had signed the note upon its face as surety. Mere delay in calling upon the principal does not affect the liability of a guarantor in a case like this. If the payee had a good right of action against the principal, he had equally a good cause of action against the guarantor. (Baker v. Briggs, 8 Pick., 130; Hunt v. Bridgham, 2 Pick., 585; Cook v. Southwick, 9 Texas, 619; Carr v. Rowland, 14 Texas, 277.) It was, therefore, no defense that suit was not brought to the first term, or to the second term, giving good excuse for not bringing the suit to the first term. This only applies to indorsers, and not to guarantors or sureties.

5. The petition avers that there was a valuable consideration for the guaranty. The defendant did not plead a failure or want of consideration. This question was not raised in the case. It was not necessary even to have averred a valuable consideration. Certainly, no proof could be demanded without a plea impeaching the consideration.

6. We have already referred to the question of the time in which suit should have been brought to fix the liability of the guarantor, but submit, further, that the note was not due until October 1, 1862, at which time the courts were effectually closed to litigants by the active operations of war during the rebellion. The State, at the time, was under martial law, and such a thing as forcing the collection of a note by ordinary process of law was impossible. The suit was brought March 7, 1867, very soon after the close of the war, and long before the civil functions of government had been fully resumed. The ordinance of the convention of March 30, 1866, provides that in all civil actions the time from March 2, 1861, to September 2, 1866, shall not be computed in the application of any statute of limitation. The ordinance of March 29, 1866, provides that when a cause of action is revived, it may be maintained, but that no interest shall be computed after it was barred. By the act of November 12, 1866, the time of holding the District Court of Washington county is fixed for the sixth Monday after the first Mondays in March and September. The suit was brought to the March term, 1867, and was the first term of the court for that county after limitation commenced to run, September 2, 1866. But by the present Constitution, limitation was suspended to March 30, 1870.

We take it that the ordinance of 1866, as well as the provision of the Constitution of 1870 (§ 43, Art. 12), suspended the operation of all laws of limitation, which would include the limitation upon suits against indorsers to the first and second terms of the court. This court has held a similar doctrine in Dwight v. Overton, decided at the present term, and in Crawford v. Bender, decided at the last term of this court.

7. The guaranty is in these words: "I guarantee the

collection of the within note." The distinctions between a guaranty of collection and a guaranty of payment are nice, and not well defined. In either case the guarantor is a mere surety. Had the payee brought suit against the maker, and driven him to insolvency or bankruptcy, then, unquestionably, he would have a right of action against the guarantor. Is the case changed by suing both principal and guarantor at the same time? We think not. By our statute (Paschal's Digest, Article 4786) it is provided that the property of the principal shall be exhausted before property of the surety can be seized under the execution. In this case it will be necessary to levy upon the property of Chrisman first, and not upon the property of Shepard until Chrisman's property is exhausted. This is strictly within the terms of his guaranty. If Chrisman's property is not sufficient, then he guarantees the collection, and his own property becomes subject to the execution, but not until it is shown that the debt cannot be collected from Chrisman. This does no wrong to Shepard, and is strictly in accordance with the statute. It is unnecessary to have two suits about the same subject matter. No one is injured by having the whole matter adjudicated at once. Plaintiff in error has the right to see that all of Chrisman's property is exhausted, for not until then does his real liability begin.

WALKER, J.—It is somewhat difficult to ascertain the legal relation of the parties to each other and the instruments sued on in this case. Suit is brought on a promissory note. The original appears to have been lost, but a copy of the note, as well as of the guarantee written on the back of it, is proven by the affidavit of J. M. Onins. The indorsement is in these words: "I guarantee the collection of the within note: C. B.

49—XXXV

Shepard." It does not appear whether this guaranty was made at the time the note was executed by Chrisman, or not. There is no date to the guaranty, nor is any time averred in the petition when it was made, nor is there any consideration for the guaranty acknowledged or proven.

The note was made on the first of October, 1861, and fell due one year from date. This suit was brought on the seventh of March, 1867, nearly five years after the maturity of the note ; the maker is still living, and is sued in this action with the guarantor. There is no averment of the insolvency of the maker of the note ; and the note never was protested, nor is there any averment of notice to the guarantor of its non-payment.

One who guarantees the collection of a note undertakes that the note should be collected from the maker, within a reasonable time after its maturity. It is said by Judge Parsons, in his work on Mercantile Law, page 69, that a creditor may give his debtor some accommodation or indulgence, without thereby discharging his guarantor. (Huffman v. Hurlburt, 13 Wend., 377 ; Davis v. Huggins, 3 N. H., 231 ; Bellows v. Lovell, 5 Pick., 307 ; Erie Bank v. Gibson, 1 Watts, 143 ; Cope v. Smith, 8 S. & R., 110.) It would seem just, however, that he should not be permitted to give him any indulgence which would materially prejudice the guarantor. (Rowe v. Pulver, 1 Cowen, 246 ; Herrick v. Borst, 4 Hill, 650 ; Miller v. Burkey, 27 Penn., State, 317.)

Treating Shepard, then, as a guarantor, there should be some consideration shown for his undertaking, or he is not liable, nor would he be liable, after so long a delay as four or five years, during which time it does not appear that any effort whatever was made on the part of Phears to collect the money from Chrisman.

If Shepard is to be treated as an indorser, then the plaintiff should have brought his suit to the first term of the court after maturity of the note, or to the second term, explaining the delay. Regarding Shepard, then, either as a guarantor or an indorser, he is not liable for the payment of the note, and the judgment of the district court, as to him, is erroneous, and will be reversed and the cause dismissed.

The judgment, as to Chrisman, is affirmed.

WALKER, J.—This case comes again before us on a motion for rehearing. As we said in our opinion hereinbefore delivered, the only difficulty which we have in the case is in the proper determination of the relation of the parties. But we think it settled upon authority that C. B. Shepard must be treated as a guarantor, from the express language of his undertaking, and he must be treated as a guarantor, not of the payment of the note, but of the *collection* or *collectibility* of the note; for he who guarantees the collection of a note, guarantees no more than that the note can be collected, with proper diligence, at its maturity, or within a reasonable time thereafter; and if, when the note matures, the payee or holder does not use ordinary diligence in the collection, the guarantor will be discharged. This is the principle of our decision, and it is too well supported by authorities to require their recapitulation here.

We can but think that counsel, in their very vigorous and learned argument for rehearing, have mistaken the principle involved in the case, and decided. And it does appear to us that they have also mistaken the doctrine of Cook v. Southwick, 9 Texas, 617, and Carr v. Roland, 14 Texas, 275.

In the latter case, the court say: "A guarantor or

surety on a promissory note, as distinguished from an indorser, is not entitled to require that suit should be brought against the maker to the first term of the court after the maturity of the note. Mere forbearance to sue the principal, or mere delay, without fraud or agreement with the principal, does not discharge the surety (who is not the indorser of a note, or drawer of an accepted bill)."

In this case the court appears to have been in some doubt whether Myers and Carr were to be treated as guarantors or as indorsers. Their indorsement was simply in blank; its nature was not stated, qualified or limited; all of which is done in the case now before us. In the case of Cook v. Southwick, 9 Texas, 615, Hubbell indorsed the note of Cook in blank, and there was not the least difficulty in determining the legal relation of the parties; and the court say, "Where a person, not the payee, signs his name upon the back of a promissory note, at the time of its inception, without any words to express the nature of his undertaking, he is liable as an original promissor, or as a surety; but it is competent for the person so signing to show by oral or other evidence the real obligation intended to be assumed at the time of signing."

These cases are so essentially different from the one at bar, that no authority whatever can be drawn from the former, to apply to the decision of the latter; for in the latter case the undertaking is specific, and is brought clearly within the rule of guaranty by legal definitions.

But we say again, suppose we treat Shepard merely as an indorser (and we should be stultifying ourselves to treat him as a maker of the note, in the face of the expressed terms of his guaranty). Then, in the case of Cook v. Southwick, the court say, "Where the indorsee of a note has complied with the statute by bringing suit

against the principal at the first term of the court, the statute is fulfilled." Less than this, we take it, would not fulfill the statute, unless suit were brought at the second term, and good reason given for not bringing it at the first.

But counsel assume that any application of this law, during the time suit should have been brought to fix the liability of Shepard, if he were an indorser of the note, would be in violation of the forty-third section of the twelfth article of the Constitution, and of the interpretation we have given to this section in Crawford v. Bender. We think a proper understanding of the nature of the statute requiring suit to be brought at the first term, or at the second with a showing of cause, would exonerate us from the necessity of an examination of such sophistry, if, indeed, it be less than an attempt at travesty upon the former opinion of this court.

The law in question is not a law of limitation. It is a change of the rule of the common law, or rather of the law merchant, under which the liability of indorsers of negotiable instruments is to be fixed.

It would be just as reasonable to say, that the rule requiring notice of non-payment and protest, or the rule giving three days grace for the maturity of a note, must be regarded as statutes of limitation, as to hold that the statute of the State of Texas, which provides another mode of fixing a liability upon certain parties to negotiable paper, should be held to be a statute of limitations, passed by the Legislature of Texas, when the rule itself is a rule of the law merchant, and was in force in the commercial world before the State of Texas was thought of, as an independent commonwealth.

In the law requiring suits to be brought at the first or second term of the court, there is no limitation as to

time. The limitation is only as to the terms of the court, and they may be held three times in one year, or one time in three years; and this brings us to consider so much of the argument, in support of the motion, as relates to diligence in bringing this suit, for herein is history violated, and the well known fact, which must be officially noticed by this court, is contradicted. It is well understood that the courts of the State were open to litigants and suitors since the Summer of 1865, and two terms of the district court were holden annually. This suit was not brought until the seventh of March, 1867.

A laborious re-examination of this case, on the motion for rehearing, has indubitably confirmed us in the correctness of our former opinion. The motion is denied.

REVERSED AND DISMISSED AS TO THE GUARANTOR.