MacNEAR *v.* MALOW.

1. PRINCIPAL AND SURETY—FAILURE TO NOTIFY SURETY PROMPTLY.
   Failure to give notice of principal's default promptly as required in a bond does not in and of itself release the surety unless the surety has been prejudiced or suffered loss by reason of such failure.

2. GUARANTY—LACHES—RELEASE OF GUARANTOR.
   While the guarantor of payment, not a party to the original undertaking, cannot complain of laches, or want of notice, unless it has worked to his prejudice, if there is want of due diligence by the payee, which operates to the injury of the guarantor and occasions him loss which he could otherwise have avoided, it operates as a release.

3. SAME—LACHES—RELEASE OF GUARANTOR OF PAYMENTS—DEPRECIATION IN VALUE—MORTGAGES.
   Holders of vendor's interest in contract for sale of six-family apartment building, who assigned their interest to plaintiffs and guaranteed payments by vendees *held,* not liable on guaranty where no notice was given of vendees' defaults within 60 days as provided by the contract of guaranty, property decreased greatly in value during period of defaults, and mortgage subsequently placed on property by plaintiffs had been foreclosed.

4. EVIDENCE—JUDICIAL NOTICE—ECONOMIC DEPRESSION—VALUE OF REAL ESTATE.
   Supreme Court takes judicial notice of fact that beginning in latter part of 1929 and until 1933 the nation was in the throes of an economic depression which affected the value of real estate.

Appeal from Wayne; Campbell (Allan), J. Submitted October 15, 1937. (Docket No. 7, Calendar No. 38,686.) Decided December 14, 1937.

Bill by Benjamin F. MacNear and wife against William F. Malow and others to foreclose a land contract and for an accounting under it and a supplemental agreement guaranteeing payments on the contract. From decree for defendant Malow, plaintiffs appeal. Affirmed.

*David I. Hubar* (*Milton M. Maddin,* of counsel), for plaintiffs.

*Milburn & Semmes* (*Edward T. Goodrich,* of counsel), for defendant Malow.

SHARPE, J. In August, 1920, William F. Malow, one of the defendants herein, became the owner of a vendor's interest in certain real estate in the city of Detroit. On the 23d day of December, 1922, he transferred his interest in said property to Benjamin F. MacNear and Nellie MacNear, plaintiffs herein, and also assigned to plaintiffs his interest in a certain land contract wherein Malow was the vendor and Morris Klein and Simon Klein were the vendees. The balance due on the contract at this time was $27,654.89, payable at the rate of $700 every three months together with interest at the rate of six per cent. At the time the defendant Malow assigned his interest in the property to plaintiffs, he also executed the following instrument:

"For and in consideration of the acceptance by Benjamin F. MacNear and Nellie MacNear, his wife, of an assignment of my interest as vendor in and to that certain contract heretofore entered into on the first day of August, A. D. 1919, by and between Samuel Feldman and Wm. Jacob, as vendors and parties of the first part, and Roy Cowin, as vendee and party of the second part, the vendors' interest in which contract has been heretofore assigned to me,

and which contract is for the sale to said Roy Cowin of all that piece or parcel of land, situated in the city of Detroit, county of Wayne and State of Michigan, known and described as follows: * * *

"And in consideration of the sum of $1 to me in hand paid, receipt of which is hereby confessed and acknowledged, I do hereby become surety for the punctual and prompt payment, in accordance with the terms and conditions of said land contract, of the balance remaining unpaid on said land contract amounting to the sum of $27,654.89, together with interest thereon from and after the 1st day of November, 1922, at the rate of six per centum per annum, and do hereby further become surety for the punctual and prompt performance of all the other terms and conditions of said land contract, to be kept and performed by the party of the second part thereto, and if any default shall at any time be made in the payment of any instalment of principal and interest when due, or in the performance of any of the other terms and conditions of said land contract, to be kept and performed by the party of the second part thereto, I do hereby promise and agree to pay unto the said Benjamin F. MacNear and Nellie, his wife, their heirs or assigns, all such sums so in default and to perform and satisfy or cause to be performed and satisfied, such other terms and conditions in the performance of which said party of the second part in said land contract may be in default within 10 days after notice to me of such default or defaults. Provided, however, notice shall be given me within 60 days after such default occurs and the mailing by registered mail of such notice addressed to me at my last known address shall be deemed sufficient compliance herewith. * * *

"It is understood by me that this is a continuing guaranty which said Benjamin F. MacNear and Nellie, his wife, their heirs or assigns, may enforce at any time a default may occur."

In February, 1928, an agreement was entered into between the plaintiffs and the Kleins whereby the payments as stipulated in the contract were reduced from $700 quarterly to $500 quarterly up to and including the payment due November 1, 1931. The reduction in the payments was consented to by Malow. Payments were made under the contract up to and including the payment due May 3, 1929, but no payments were received under the contract after the above date with the exception of an interest payment of $42.22 made October 7, 1929. The payments and taxes in default amount to the sum of $10,462.90.

From August 1, 1929, to January 3, 1930, the plaintiffs made no attempt to advise defendant Malow that the payments were not being made as called for by the land contract. In September, 1930, plaintiffs brought the present suit for money due them on the land contract and guaranty and contend that the failure to notify Malow, the guarantor, within the 60 days as prescribed in the written guaranty did not relieve Malow from the terms of the agreement; and that, at any rate, the guarantor should not be relieved of payments falling due beyond January 3, 1930, which is the time plaintiffs claim that defendant Malow was notified of the default of the vendees in the contract. The trial court held that the requirement of 60 days notice was a valuable property right of the defendant Malow and was a condition precedent to any liability under his contract; and entered a decree in favor of defendant Malow.

It is conceded in this cause that the defendant Malow was not notified of the vendee's default within the 60 days as stated in the written guaranty and it is also conceded that the written instrument is a guaranty of payment and not a guaranty of collectibility.

The rule in Michigan is that failure to give notice promptly as required in the bond does not in and of itself release the surety unless the surety has been prejudiced or suffered loss by reason of such failure.

In *Re Kelley's Estate,* 173 Mich. 492 (Ann. Cas. 1914D, 848), a note was given to a bank to guarantee payment of various notes of a nursery company. The note signed by Kelley was given 16 months prior to Kelley's death; and at the time the note was given, the nursery company was solvent. No attempt was made to collect the note from Kelley's estate until about five years after Kelley's death, at which time the nursery was insolvent. We there said:

"Defendant's counsel requested the trial court to charge the jury as follows:

" 'It is uncontradicted that, at the time the collateral note was given, the West Michigan Nurseries was a solvent corporation with assets sufficient to pay all its debts; that said corporation continued solvent during the lifetime of Frank M. Kelley, and that said corporation continued solvent for more than two years after the death of Frank M. Kelley. And I charge you that a delay on the part of the creditor, the Farmers' & Merchants' Bank, of demanding payment upon the collateral note for a period of more than five years, under the circumstances shown in this record, releases Frank M. Kelley and his estate from liability upon such contract.'

"It is true that prompt notice of default in payment is not necessary to charge a guarantor, as in case of an indorser; but it is advisable to give such notice inasmuch as it frequently becomes important to prove notice to meet the presumption of laches arising from long delay. 1 Edwards on Bills, p. 241. Delay may, and often does, amount to laches and bar recovery regardless of the statute of limitations. While the guarantor of payment, not a party to the original note, cannot complain of laches, or want of notice, unless it has worked to his prejudice, on the other hand want of due diligence by the payee, which operates to the injury of the guarantor and occasions him loss which he could otherwise have avoided, operates as a release.

"While this rule is enforced on less provocation in cases of a guaranty of collection than a guaranty of payment, it is equally applicable to the latter. It has been held that the guarantor is released if the payee fails to make demand, give notice of default, or to take any proceedings to collect for a period of five years. *Shepard* v. *Phears,* 35 Tex. 763. Where the maker, financially responsible when the debt became due, has left the State or subsequently becomes insolvent, a shorter period of delay is often imputed as laches and discharges the guarantor. *Oxford Bank* v. *Haynes,* 8 Pick. (25 Mass.) 423 (19 Am. Dec. 334) ; *Gaff* v. *Sims,* 45 Ind. 262; *Gamage* v. *Hutchins,* 23 Me. 565; *French* v. *Marsh,* 29 Wis. 649; *Withers* v. *Berry,* 25 Kan. 373.

"For the reasons heretofore given, we are of opinion that the request quoted should have been given and a verdict directed for the defendant."

In *Berkshire Land Co.* v. *Moran,* 210 Mich. 77, defendant contracted to complete certain paving by August 1st. He commenced work early in April and did some grading, but abandoned the work in August. The first notice to the surety company of his default was on August 30th. This court held that, under the circumstances, it was apparent about the last of June or first of July that the work could not be completed by August 1st. The court said:

"In a case closely analogous, which was referred to by the trial court in directing a verdict for the surety, it is said:

" 'The plaintiff failed to keep his covenant before the surety company had in any way failed to comply with those which it had made. On this account, he cannot enforce the fulfillment of the covenant of the defendant. He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure on his part to perform.' (Citing many cases.). *National Surety Co.* v. *Long,* 60 C. C. A. 623 (125 Fed. 887).

"Of this decision plaintiff's counsel urge that it followed the rule of *strictissimi juris* and is 'out of

line with later decisions,' citing and discussing many cases in support of their contention that the trend of modern authority departs from the strict rules of forfeiture laid down in the *Long Case.* We do not understand that those authorities depart from or modify the general rule relating to contracts stated in the *Long Case,* but do hold in construing various indemnity bonds given by paid sureties that under the facts involved in the respective cases failure or delay in giving notice or some other deviation from strict compliance was not, or may not have been, where facts are at issue, a material variance, or 'substantial breach,' of the contract unless it appears that the paid surety was in some manner prejudiced or suffered loss by reason of the same. As the decisions of this court tend to that rule of construction it is unnecessary to discuss the many cases cited from other jurisdictions. *People, for the use of T. B. Townsend Brick & Contracting Co.,* v. *Bowen,* 187 Mich. 257; *People, for the use of H. Houghton & Sons,* v. *Traves,* 188 Mich. 345; *Ladies of the Modern Maccabees* v. *Illinois Surety Co.,* 196 Mich. 27.''

The court further said, quoting from *George A. Hormel & Co.* v. *American Bonding Co. of Baltimore,* 112 Minn. 288 (128 N. W. 12, 33 L. R. A. [N. S.] 513):

" 'The object of requiring notice to be given of the contractor's default which may involve loss was to enable the surety company seasonably to take such practicable action as might prevent or minimize loss by reason of the default. * * *

" 'The very purpose of the notice was to enable the surety company to investigate, exercise its judgment, and take steps to avert the threatened loss. The owner could not speculate upon the probability of loss, but was bound to give the notice as required by the contract.' ''

We also there said:

''Here the owner not only speculated upon the probability of loss, but apparently appreciated that under existing conditions it was inevitable and the sooner the job was finished the less the loss would be. * * *

"Under the undisputed facts in this case the trial court rightly held as a matter of law that plaintiff prejudicially neglected to promptly and within a reasonable time give the surety due notice as contemplated in the contract between the parties. Under the circumstances shown such palpable and prejudicial default in a material condition precedent was a substantial breach of the contract which discharged the surety."

We next approach the question of damages sustained by defendant Malow as a result of the failure to notify him in accordance with the terms of the contract. To substantiate this claim defendant Malow produced as a witness Gerald Hahn, vice-president and secretary of Hahn & Company, whose firm did a general real estate business. He testified, when asked about real estate conditions in Detroit, that during the fall of 1929 there was a very substantial decrease in real estate values; that in January, 1930, real estate values had decreased one third of what they had been the previous October; and that during the latter part of the year 1930 conditions were worse than in January of that year. He also testified that he was familiar with the property involved in this suit; that it was a six-family apartment with a small place for the janitor in the basement; that in the early fall of 1929, the value of this property was $25,000; that in January, 1930, its value was $18,000 and in September, 1930, its value was between $12,000 and $13,000. He also testified that in the early fall of 1929 each apartment would rent for from $55 to $65; that in January, 1930, each apartment would rent for from $40 to $50 and in September, 1930, from $30 to $40.

On the question of depreciation in the value of real estate in general the record shows that beginning

in the fall of 1929 there was a decline in the market value of real estate and this court takes judicial notice of the fact that beginning in the latter part of the year 1929 and until 1933 the nation was in the throes of an economic depression which affected the market value of real estate. The record also shows that MacNear and wife on January 31, 1928, placed a mortgage upon the above property in the sum of $10,000; and that on April 12, 1932, a decree of foreclosure was entered which stated that the amount of principal and interest due as of that date was $11,163.16.

The equity in the property in the early fall of 1929, the time at which the notice should have been given, was approximately $15,000 and in January, 1930, the time when plaintiffs claim to have given the notice, it was $8,000, while in September, 1930, the time when defendant Malow says he received the notice, the equity had been reduced to not more than $3,000.

Under the guaranty defendant Malow was entitled to notice of the default on or before October 1, 1929. Whether Malow received this notice January 3, 1930, as contended by plaintiffs, or in September, 1930, as he contends, makes no difference in the ultimate result of this case as, in either event, the loss was a substantial amount which brings this case within the rule enunciated in *Re Kelley's Estate, supra,* and *Berkshire Land Co.* v. *Moran, supra.* The failure of plaintiffs to comply with the terms of the conditional guaranty prevents recovery.

The decree of the trial court is affirmed. Defendant Malow may recover costs.

Fead, C. J., and North, Wiest, Butzel, Bushnell, Potter, and Chandler, JJ., concurred.